I do. Congratulations, welcome aboard. I'll expect extra hard work now. Not that they haven't been giving it so far. All right, we will call our first case of the day, United States v. Gaitham Dudley Shannon. We have a number of issues presented here. Right. Have you reserved rebuttal time? I'd like you to reserve two minutes of rebuttal, if I may. May it please the Court, my name is Paul Bowie, as I represent Gaitham Shannon in this case. We do brief four issues in this case and two of these... Can you pull the microphone closer? I'm sorry. We're not hearing you. We do brief, I brief four issues in the case. One deals with what we claim is an error in Judge Block's instruction to the jury after the jury said they were deadlocked. One deals with Judge Block's decision to allow in two 24 and 25-year-old priors for 404B purposes. I would rely on the brief on those two issues, if that would be all right. Of course, if the Court had any specific questions. Which two again? I'm sorry. The issue regarding the judge's instruction to the jury when they came back and said they were deadlocked. And the issue regarding the 404B admission of 25-year-old priors. Okay, fine. Understood. So we're reserving Doyle and the sentencing issue. That's right. Let me start out with Doyle. In this case, Your Honor, the government had been investigating this conspiracy between Middlebrook and Taylor and others for over a year. There had been wiretaps, buys, informants, surveillance. Every method of electronic surveillance that's currently available. Things I'd never heard of before, like stingrays and trigger fish. They had compiled phone records and so forth. And they had never heard of Gaith and Shannon until the very last day, September 29th, when there was a surveillance of Middlebrook and Taylor meeting. Middlebrook allegedly received a suitcase from Taylor that contains a large sum of money. Sure. And we're well familiar with the facts at this point. Your opponents say, yes, it's true that there shouldn't be comment on post-arrest, post-Miranda silence, but there's an exception when the defendant himself sort of brings that into issue by claiming cooperation. Yeah, well that's a... Yes. That's a bit of a red herring. There was no cooperation. There was no intent to show cooperation. The government refers to a few points in that regard, and I'll briefly comment on them. At one point, it came out that Middlebrook, when he was arrested, fled the scene and tried to destroy his cell phone. And so one question we asked is, when you arrested Shannon, he didn't try to flee the scene or destroy any evidence. He was cooperative with the directives of authority to lay down, to not go away. That was the extent to which we referred to cooperation. It wasn't giving statements and trying to set people up. It was not fleeing and not destroying evidence. The government also said that we tried to suggest that... You were helping them try to track down the mysterious... When we got from the government Shannon's phone records, Shannon and myself and our investigator went through these thousands or hundreds of pages trying to figure out which phone number matched this guy we were looking for. And right before he said they went through the records, he said, me and my counsel were doing this. It clearly wasn't about him going to the government. It was about, quote, me and my counsel trying to find the corresponding phone number. It had nothing to do, there was no suggestion at any time that he was working with the government in this regard. There's another... Judge, you're on the phone. There's another one as well. One of the comments and your adversary points out, I mean, about your client's statements to non-law enforcement persons. I guess the question was something to the effect of, did you ever direct anyone to tell authorities about Williams? Is there any case law out there that supports your argument there? Well, it would be an absurd distinction, if I may, Your Honor, to suggest that if the question was, isn't it true that you never told authorities about Williams, was somehow different then, isn't it true that you never directed anyone, such as your lawyer, to tell authorities? I mean, remember, this guy is in jail the whole time. Any communications he's going to have with authorities is, by definition, going to be through a third party. That's the way it has to be. The government wouldn't accept his phone call. At least they shouldn't, knowing he's represented by counsel. The cross-examination, the direct examination, the cross... But doesn't Miranda deal with, you know, warnings about making statements to law enforcement, not others? Well, authorities... The question is, from September 29th, that was the day of the arrest, until yesterday, did you ever direct anyone to come to the authorities and say, listen, you need to know about Phil Williams. I started objecting. The court wouldn't give me a sidebar, wouldn't let me speak. I managed to get in. It's a comment on silence. Did you ever direct anyone to bring that information to law enforcement? And then later, he says, you waited until you took the stand to tell us, to tell us. That's the government about these people. That's a separate statement altogether. We can get to that later. But as you pointed out, three comments. Judge Jordan pointed out one. I pointed out one. And then in the closing, they said he waited 14 months to tell us about this. It's all about the government. And if this turns on as subtle a distinction and as meaningless a distinction as, did you ever tell us, as opposed to, did you direct someone to tell us? In the closing, it was as much a response to the statement that you were making that they could have investigated the alibi. Well, that's right. It was a response to that, but it was an improper response. It still suggested that... But they didn't know about the alibi, did they? There wasn't an alibi. They keep using the term alibi. We never said alibi. We admitted he was there on September 29th. That's a total, a phony issue. We never came up with an alibi. Now, how about the issue of harmlessness? Assuming this is a... Well, first of all, let's look at the verdict. The jury completely acquitted on the substantive count, and they came 90 percent to acquitting on the conspiracy count. They said, yes, conspiracy, but no as to five kilos or more, no as to 500 grams or more, yes as to less than 500, and they gave a note to the judge that we're hopelessly deadlocked. So just for... And I know that's not the end all be all, but the jury didn't think it was that overwhelming. Further, as I pointed out at the beginning, and Judge Jordan, you indicated you were familiar with the facts, his name never came up in this thing. The only time they even saw, heard of, or knew about Gaethan Shannon is when they followed Middlebrook from Pittsburgh to this truck stop, saw Shannon being handed a suitcase, and then three officers saw this event, and none of them saw the whole thing, but all three together saw everything, and Shannon did not hand him... Then you also have Taylor's jailhouse testimony. Right, but even Judge Block didn't credit that. Judge Block, in his findings for sentencing, said Taylor's... Taylor was not very believable, he had a self-interest involved. Judge Block said all this business about the cell tower records don't really prove anything, because even though Shannon may have been in western Pennsylvania on many of the dates Middlebrook was here, the cell tower records show that Shannon was in western Pennsylvania on many dates when Middlebrook wasn't here. So it wasn't a very strong case. But taking that as for purposes of discussion, that it wasn't a very strong case, if my colleagues will let me, since time's winding down here, I would like to ask you about Alene and Apprendi issues for a minute. Let me read you something from the government's brief and ask you to respond to it. Here's how they characterize your argument. They say, Shannon maintains that after Apprendi and Alene, the district court cannot sentence a defendant on acquitted conduct regardless of its effect on any mandatory minimum or statutory maximum as long as it increases his range under the advisory guidelines. That's at page 46 of their brief. That's not our position. Our position is that the court, the sentencing court has broad discretion to take into account all sorts of factors in deciding an appropriate sentence as long as the sentence isn't beyond the statutory maximum. One factor that they can't take into account is when a jury has specifically found that conduct which is an element of the crime hasn't been proven. Well, you're mixing things. You say one factor and then you said element. It really makes a big difference whether it's a factor or an element. Well, actually, Judge, in your concurring opinion in Greer, you basically say the same thing that I'm saying, to be honest with you. And I'm sure you're familiar with that language. But I have it here. The fact is that in this case, unlike mostly all of the cases the government cites where these pleas and so forth, this indictment alleged five kilos or more, a special interrogatory was given to the jury, and they said no, the government has not proven what Aileen calls to be an element of a new aggravated crime. And I think that's the problem. We have Aileen and Smith saying when you have an element that would increase the statutory minimum, it must be found by the jury. So how can you say, and I guess this is your argument, but I'm making it, I want your opposing side to address it. Well, no. But how can you say that if the jury specifically finds against it, can you say, well, okay, it wasn't proven beyond a reasonable doubt, but the sentencing court still can sentence based upon a preponderance of the evidence. Can you say that? Well, the governor can say it, but it doesn't make any sense. It's offensive to basic notions of due process. As one judge said Does the sentencing judge have to invoke and say, oh, now since there's a mandatory minimum because I find it 16 kilos, so this is why I'm finding during this range. Does the sentencing judge have to invoke it, or do we say because, you know, automatically, because he's saying 16 and there is a raised minimum, that that's an Aileen violation? That's right. Is the point here, you, they try to attribute to you the argument that you are saying if it affects the guidelines, it creates an Aileen problem. I'm saying if it affects a mandatory minimum. I've never said if it affects the guidelines. In other words, since we're dealing here, they chose to charge an 841B1A2 offense that is 500 kilograms or more. They didn't make that stick. The 10-year mandatory minimum is pegged to that, and that's why they've got an Aileen problem. That's right. I understood your argument correctly. You understand it exactly right. The fact is that Aileen goes out of its way to say repeatedly when the fact would increase the mandatory, just as Apprendi said, when it would increase the statutory maximum. It is an element of the crime, and it's not the It's sort of crystal clear that it should say comma and that can't be used for any purpose. Then what do we do with Watts? What do we do with the Supreme Court's opinion in Watts which says acquitted conduct can nonetheless be used? But Watts came before both Aileen and Apprendi, and Watts wasn't, or at least it came before Aileen, and Watts never mentioned the fact that the issue we're talking about is an element of the crime. It's a complete distinction. Further, we didn't see Watts in Aileen either, I mean, being discredited, right? But it didn't really come up. Aileen dealt, Aileen said several things very clearly. One, when it increases, when a fact increases the mandatory minimum, it's an element of the crime. And two, when that occurs, it has to be a legitimate indictment and proven by a jury, not a judge. They don't deal with such subtle distinction. But you say, once it's disproved by the jury, what the judge can then do, and that's this case. I think it's assumed that he can't do anything. If he says this guy's a scoundrel, he's not remorseful, he has a terrible past, he was violent during this offense, he showed arrogance on the witness stand, fine, give him the maximum. Those are all relatively good factors. Like the Smith case that the court directed us to write a letter on. Number of victims. That's always been a guideline factor. A lot of victims give him a bump. Not an element. But the other... Should the judge have said here, you know, you're not subject to the mandatory minimum, but you are a scoundrel and a rotten person and thoroughly bad and under 3553 I've weighed all these factors and I'm giving you 10 years. He should have given him 20 years. Right. But that's not what he said. He said, because, you know what he said, and this is, with all due respect to my feelings about the judiciary, this was offensive to me. Judge Block said the jury got it wrong. That's what he said on the record. They were wrong. Their verdict makes no sense. I'm giving him 20 years. Well, it doesn't make sense. It does. Yes, it does. How does it make sense? And I argued with the judge for pages about that. 500, where does that come from? 500? He knew that there might have been cocaine involved, but he had no idea as to the quantity, no idea to the breadth of it. Then you should acquit him. Well, but they compromised. They wanted to, a bunch of, they came very close to acquitting. Let me say this. One judge, and I cite this in my opinion, stated in a district court when he was criticizing Watts that it only confirms the public's darkest suspicions about the justice system to sentence a man to 10 extra years for conduct that the jury said he was not guilty of. And that's really the crux of this. The idea that you can win in court and still be sentenced for the same thing the jury said wasn't proven. Because that is Watts, who? Well, but Watts, but Watts went off on double jeopardy. This is on the Sixth Amendment right to a jury. Watts said, we really don't know what the jury was saying by a general not guilty. It would have to be a specific finding. And here there was a specific finding. And that this is a fact that has to be alleged in the indictment and proven to a jury because it's an element of the crime. It's, thank you very much. Thank you. We'll hear from you in a rebuttal. May it please the court, AUSA Donovan Cocos on behalf of the United States. I have to confess, I've used the word alibi loosely. What I mean when I'm talking about his alibi is his story. We have not heard Shannon's story until he testified. At this trial, Shannon took the stand and testified that he'd been set up to take the fall in a massive Houston to Pittsburgh cocaine distribution conspiracy by a Philip Williams who worked at Maritime Container in Houston, Texas. As Judge Jordan said before, we're aware of the facts. How is this not a Doyle violation? I mean, in Doyle, there's one question. And here there's at least three questions that say to the jury, you know, this guy should have spoken up earlier. Yeah, and that's because Shannon, first of all, I'm not convinced that any of these questions goes to his silence in the immediate wake of his Miranda warnings. That's Doyle for you. That's not what our case law requires. What is his immediate wake stuff? Okay, but see, Doyle footnote six limited the holding to silence in the immediate wake of Miranda. I know this court in Davis in 09 has said subsequent Third Circuit cases have extended Doyle to all pretrial silence. I'm raising the issue to preserve it for further review for us. All right, it's preserved. Now, as to why this is not a Doyle violation, you have to look at his testimony on direct because near the very end of direct, his attorney asks him, have you tried to find Philip? And he says, yes, I've tried to find Philip. Right there, the implication is he's at least working for authorities because Why is that the implication? Because why else is he trying to find Philip, Judge Shorin? Because he's perhaps trying to exonerate himself without your assistance. Which he can't do unless Philip goes to authorities or he takes him to authorities. That seems an extraordinary stretch, Mr. Kokos. I think, isn't there language quoted by your attorney that says that there has to be a blatant inconsistency with the defendant's trial testimony for there to be some kind of opening of the door for this kind of use of post-arrest, post-Miranda silence? And the blatant inconsistency from our perspective is that he says he's trying to find Philip but then, and he says even he has told several people some version of his story all after his arrest, but then he doesn't convey information to those people which would enable them to help him or do anything for him. How is that not an invitation to just walk all over post-arrest silence? It sounds like what you're arguing is you can't say anything without implicating your post-arrest silence. If you say anything about what you did, that opens the door for us to walk in and say, well, you never did anything to say that to the authorities. Well, if you open the door and then don't close it behind you, like Mr. Boas could have asked his client, let's go through what you did to try to find Philip. Let's go through everybody you talked to to try to find Philip, but he didn't do that. How is what he said, quote, blatantly inconsistent? Because if his testimony is he's trying to find Philip and as Mr. Boas says, his client is in jail the whole time, so he's working with somebody to try to find Philip. He's working with his lawyer to try to find Philip to have him come forward and hopefully testify. But he's not said that. He's left that vague, and then when he starts testifying on trial... Right there when you say he's left that vague, don't you step right into it, Mr. Kokos, because how can something be, quote, blatantly inconsistent if it's, quote, vague? Okay. Let me ask you that. So I'll answer that question kind of with another question but kind of not. You don't get to ask questions. You've got to answer our questions. That's fine. Then what I'm saying, Your Honor, is this. The Portungo case's defendants can be cross-examined like any other witnesses. I mean, if another witness testifies vaguely, we can follow up on cross. Sure. The whole point of Doyle is you don't get to cross-examine the defendant that way. If Doyle means anything, it means what it says in its very first sentence, that it's a violation of due process to start talking about the silence of the defendant when they come forward with some story at trial that you didn't hear before. That's exactly the facts of Doyle. That's what you've got here. That's what you did. And in the conference with the judge, you seem to think that Doyle didn't say what it says because the judge said, once you take the stand, you've waived your Fifth Amendment right, which strikes me as a complete misapprehension of the law, and you just go right along with it. Well, because I don't know that... First of all, I don't think the judge understood the nature of the objection. That's why I raised the preservation issue. How could he not? Because he himself later, when Mr. Boies raises it, says, you've made your objection, you're preserved. Right, but I think, I don't know that there was a meeting of the minds as to what that objection was. If he says Fifth Amendment, come on. Everybody but say the case name. Okay, but here's the problem. Yeah, that's right. But here's the problem I have, Your Honor, which is that Doyle does say you can't impeach the defendant with his post-Miranda silence, at least in the immediate wake, if not as the circuit has applied it all the way through. I couldn't find any case, though, that found a Doyle error, let alone a harmful one, where the defendant goes the extra mile and says, yeah, here's my alibi. I told several people my version of the story after my arrest, and I even tried to find the person who set me up or who's responsible for my predicament. I think when a defendant does all of that extra stuff, we have to be able to cross-examine about what he did. I thought that's what Doyle was. Doyle involved somebody getting on the stand and giving a story that the authorities hadn't heard before. And you were a loose use of the word an alibi. Right. And the court said straight up, you don't get to do that. Right. So I'm still absolutely, I'm not getting in. I don't mean to be obtuse. I don't see how you don't have a great big Doyle problem. Because he doesn't just testify to an alibi. He testifies to things he did or didn't do and to people he spoke to all post-Miranda about his predicament. Assume he hadn't said anything about who he spoke to. Right. Wouldn't you be saying the exact same thing and say, well, we never heard this before. How come you didn't tell anybody about X, Y, or Z? No. If he hadn't said both, I'm trying to find Philip and I've related some version of my story to other people. That's what makes the difference? If he hadn't said that, I think we'd be conceding error. At least I would have advocated for that. But to me, that makes all the difference. Because as soon as he says that, the prosecutor is entitled to cross him on what he did or didn't do. That's interesting, because that's not something that surfaces at all in the discussion between you and Judge Block and Mr. Boas. It's a straight up assertion that once you take the stand, you weigh. Right. And that's, I think, you know, not to make a scene out of this here, but I don't think Judge Block understood the objection. I'm not talking about Judge Block now. I'm talking about you, Mr. Kokos. You jumped right on that and indicated the exact same thing. Well, the trial he was saying did. I wasn't the trial he was saying. That's not an excuse. But I don't think he understood the objection either, because frankly, Doyle wasn't mentioned. Morand is not mentioned. I mean, this man testified even at a pre-trial. Well, I mean, you all have practiced criminal law. It doesn't take rocket science to read this colloquy. And did you ever direct anyone to come to authorities and say, listen, you need to know about Philip Williams? Your Honor, may we have a sidebar, please? No. I object to that. Overruled if that's an objection. He's asking the question, did you ever tell anybody about Williams? I told my lawyer about it. Did you ever direct? I mean, it's a Fifth Amendment comment. I object. I would like a sidebar. You're overruled. Somebody should have realized what was going on here and maybe suggested that to the extent this is, you know, you can't take this as having to do with his post-arrest silence. In fairness to the judge, though, Your Honor, I mean, I counted. Mr. Boaz asked for 22 sidebars in the course of this trial. This judge's practice is to do those minimally. And right around sidebar four or five at page 375, the judge took them aside and said, look, we can't keep running up here to do sidebars whenever you have an objection. Isn't the Fifth Amendment of the United States Constitution being worth a conversation? I'm sorry? Isn't that kind of a significant point? As soon as you say, Your Honor, Fifth Amendment right to silence due process here is being implicated, you don't think that's worth a conversation at the side? Your Honor, I mean, from hindsight, I would have liked the sidebar if only because I think the judge would have agreed to us that the door has been opened. And if he had agreed with us, that decision would have been reviewed for abuse of discretion. Whereas now here I am in front of the court, de novo. So I would have liked the sidebar. But the court, you know, after a few and up to, you know, kept granting sidebars up to like 22 of them. We asked for two in the whole trial. Yeah, but we were district court judges. And you, you know, you take the sidebars as you see them. And sometimes maybe they're not useful and they're not necessary. But your antenna kind of goes up. Yeah. And Judge Block's an experienced judge. He just had a misapprehension. I think so. I think that's what happened. How about why is this error harmless? Well, I think it's harmless. To me, I think the split verdict, I mean, Mr. Borges construes that as well. Our evidence wasn't overwhelming. But I don't see it like that. I think fairly. Well, that's a good question. Does the split verdict, is that something we consider? Well, if you do. We consider, he mentioned notes and a lot of different things. I don't know. I mean, frankly, I don't know. If you do consider it, look at it like this, I think. The jury found our evidence that Mr. Shannon was a drug courier was less than overwhelming, I think, because no one saw him hand Middlebrooks the bag of cocaine. So that's why they couldn't. Well, also the phone records. I mean, there was nothing. His name was not even mentioned. And his name's not mentioned. But I think they couldn't see their way clear to let him walk on the conspiracy charge because the evidence that he was at least a drug money courier was overwhelming. I mean, he's seen red, holding this bag red-handed, sits there with it for 45 minutes. But there's no overwhelming evidence. Is there? I think there is, between direct and circumstantial. You have him sitting with a bag of money that he says he thinks is drug money. He doesn't call police for 45 minutes, ever. I mean, he's arrested. No, see, that I know. He doesn't call the police for 45 minutes. My thought of the way this unfolded is that he goes into the bag, goes, cuts, goes, says, this isn't good, gets out of the cab of the truck, is walking in to make a phone call, and he's arrested 25 feet from the entrance to the truck stop. So this is not a 45 minutes after he's discovered this is drug money. He's, like, out of his cab. It's unclear when in the 45 minutes he's discovered this is drug money. Well, it's at the end of the 45 minutes when he says he's thinking something's not right here. Right. So then he calls his girlfriend. I mean, he's not calling the police. He doesn't have to call his girlfriend, does he? He calls her after the fact, right? After the fact. As he's walking out of the truck, right? And so, to me, the problem is you have him red-handed with the money. He doesn't call police. You have Taylor's testimony. You know what? He's been arrested. I had this conversation with my law clerk. He's been arrested. He's been to federal prison. Mm-hmm. And he finds a whole boatload of money. Is he really going to call the police and say, you've got to help me here? That wasn't his. We just found a whole lot of money. He could have said that, but that wasn't his testimony, Your Honor. I know, but I'm just talking about common... You're saying that common sense is that he calls the police. Yeah. I'm saying that common sense is he wants no parts of anything. I mean, and then the circumstantial evidence that he's up in 84 every time a drug deal is going down. Let's assume he's not taking drugs back. You know, before we get to the circumstantial evidence, what's the standard review here? Is it Chapman? Are we talking about... It's Chapman. So you have to demonstrate, and it's the burden on the government, right? Right. You have to prove that this error, if we decide it's error, is harmless beyond a reasonable doubt. Correct. Right? That's a pretty high burden. Is your circumstantial evidence, the fact that he's gone to 84 a few times, is that going to... And even accepting that he was looking at the cash for 45 minutes, is that enough to get you over the hump? You add that plus Taylor's testimony, which Judge Block just disbelieved as to the amount of drugs involved in the conspiracy. He didn't reject the whole thing. If that plus Taylor's testimony, the trucking records, you know, his own kind of... Remember, Gant says, however, the more improbable it is, the less likely it's to be harmful. You have him saying, well, all those times I was up there before when a drug deal was going down, you know, yeah, I was up there going to a restaurant that I like, but I don't remember the name of the restaurant. I mean, it's little things like that that you have to take all together. And the Boost phones, I guess. And the Boost phones, yeah. The coincidence of him chirping someone to a Boost phone in Houston every time Middlebrooks is chirping someone else to a different Boost phone in Houston. Yeah, it's all of that together. Can I... My colleagues will allow me to shift to Aline for a moment. Sure, sure. You heard me read to Mr. Boas the comment from your answering brief and you heard him disavow it, he disavowed it, and replied. I take their position not to be that anything that affects the guidelines is a problem, but to very specifically be something that implicates a mandatory minimum, and this did, is right smack in the heart of Aline. Now, if that is their position, that's what they are validly taking as their position, would you explain to us why, when the government chooses to charge with a mandatory minimum, you can charge however you want, but you chose to charge the 5 kilos or more which carries with it the 10-year minimum mandatory, and the jury doesn't accept that, rejects it on a special interrogatory, that it's not an Aline problem if the court purports to reject the jury finding. Right, and really I don't know how else to say it other than Watts kind of stands in the way of this court doing anything about that. Watts is about double jeopardy. Watts doesn't, even once that I'm aware of, say, and this is not a Sixth Amendment problem under Apprendi. But I've cited cases, albeit from other circuits, but published ones, I think, that deal with this in terms of the Sixth Amendment issue. As to whether this triggers a mandatory minimum, I'm not, I know Mr. Boies is saying that it does, I don't understand that it does, because he's sentenced on the conspiracy. It's charged in the indictment 5 kilograms or more. The government, look, I don't want to bring personal stuff into it, but I was an assistant U.S. attorney, I charged plenty of drug defendants. The only reason I ever knew of for putting that in and adding something that you had to prove, which otherwise you wouldn't have, is specifically because it was going to implicate a mandatory minimum. So I don't know what the purpose of this was unless the government was intending to implicate a mandatory minimum. And if that's the purpose, how can it not be a problem under Alene when you don't win that point for the judge to say, I reject the jury's finding? I don't know what the purpose was of putting that in, but I do know, I mean, he's convicted of the conspiracy count which carries a 30-year statutory max, and that's on the 500 grams or fewer of cocaine. But that doesn't answer the question. Is it not an element, because it increases the mandatory minimum, is it not an element? I don't know that it necessarily is, because he's sentenced within a guideline range. No, no, no, Alene said an element, any fact that increases the mandatory minimum to which the defendant is exposed is an element which must be proven beyond a reasonable doubt by the jury. I think that's a quote from Alene. Yeah, I think it is. So how, so this would be an element, would it not? If this case triggered a mandatory minimum and he's sentenced according to that, I think so. Okay, and isn't that what happened here? I don't think that's what happened here, Your Honor. I mean, I'll have to look back, but I'm just now understanding Mr. Boas' argument more clearly for the first time, but I don't think that's what happened here. Well, when the jury rejected it, when the jury rejected that element, didn't they? They rejected the element of the 5K or more, right? They rejected it. They did. So how can we say, consistent with Alene, that it's okay for the judge to do it if the jury, who has to okay it, has said no to it? Okay, I think it's because when the jury rejects it, it accepts a 500 grams or fewer quantum, which triggers a 30-year statutory max. So by zero minimum? Zero minimum. I think so. No minimum. So now we're in guidelines land and the judge gets a range from that and I think he can choose within that range. Perhaps he could or he couldn't, but your opponent isn't even arguing that. Mr. Boas stood there a few minutes ago and said, in effect, I'm not suggesting that the court couldn't have gone through a 3553A analysis and reached above, somewhere below that 30-year minimum. But what the judge wasn't entitled to do was what the judge did and that was to say, the jury's verdict makes no sense, I'm giving you 10 years. Now, those are the facts we're dealing with and I guess the question is, on a record that stark, how could we say that's not a lien problem and leave anything left of a lien? Well, again, I have to look and see whether this does trigger a mandatory minimum. I can promise you it does. The minute the judge says, I'm finding 16, the minute he, he didn't have to say that. He could have said, it makes no sense, you're getting 10 years. Right. But the minute he says 16, boom. Yeah, and you can, I invite you to look in the appendix at 30 to 31, at the superseding indictment. That's the charging decision. It charges 5 kilos or more. Section 841B1A2 sets a minimum mandatory of 10 years for 5 kilos or more. Right. That is a minimum mandatory specifically tied to an element charged in the indictment. Yeah, I see. So that's a lien, isn't it? Yeah. I think it would be if he sentenced according to that, but I think what happens is the judge sentences them according to the guidelines range. And I don't know that the mandatory minimum has any effect on the guidelines. You mean the judge would have to say, oh, and by the way, the reason I'm giving you this guideline sentence is because there's a mandatory minimum of 10 years? No, I, but if he says, and you know, I'm going to give you the mandatory minimum, then we know he's done that. So, you know, that, that to me is the best I can do. I mean, I don't see how to get around Watts saying that you can sentence a defendant based on acquitted conduct. Now if you're finding that it's... Because Watts sounds like deals with the wide range of stuff which are legitimately sentencing factors, quote unquote, that is not elements of an offense, which could be found even if a jury rejected some argument or discussion that the government tried to prove. Right. I mean, is, well, I'm not, I'm just, there seems to be a whole lot for Watts to say without it being interpreted to be directly in conflict with Alene. Because what it sounds like you're suggesting is that somehow Watts overruled Alene in advance. I mean, Alene says what it says after Watts. So... But, and Watts was a general verdict. We don't know what the jury did or didn't find. Here, we know what they found. Yeah. It's really clear. Yeah. But this is equated, I mean, it's equated conduct just the same as a general verdict would be. It's totally rejected, they totally rejected an element. They... Totally rejected... They, the jury. Yes, the element of the five cases. So, is your argument, though, it was a different standard of review? I mean, if I'm reading your brief correctly, are you saying, you know, because it's preponderance sentencing, it can be considered? Yeah, I mean, I think it is. We don't, we won't know what the jury would have found if they'd been asked to evaluate these higher thresholds to a preponderance standard. Maybe they would have found five kilos or more to a preponderance. But, but it's the whole point  that because the jury has to find it, it's a reasonable of that standard. Yeah, it's a, it is a sixth limit. That's the whole point. Right. And I got to say, I apologize when I was saying you, you, I mean the royal you, the government you, not you specifically. Oh, no, I understand. But, when you choose to, when you choose to charge so that you implicate a minimum mandatory, you know, you pick up both ends of that stick. You get the, you make the choice, you pick up the consequence. The consequence is if you don't prove it, that's acquitted conduct, which, according to the Supreme Court, cannot then be the basis for imposing a sentence on a preponderance of the evidence standard. Other stuff might boost you up there. Other things under a 3553 analysis might get you up there. But if a lien means anything, doesn't it mean that you can't use what the jury said no to to in fact get the person with the same punishment? Well, I don't know that that reading can be still reconciled. I don't know what to do with Watts then if that happens. That's the only thing. I mean, I'm trying to figure out how to read the two together and a lien isn't much help because it doesn't mention Watts even though that's definitely looming out there. Yeah, and I think maybe it doesn't just because the Supreme Court thought it's really not in conflict and that double jeopardy issue doesn't have anything to do with the sentence. You do? I'll be very brief. Getting back to the Doyle issue, I'm not suggesting that there was insufficient evidence to convict. The jury had enough evidence that if they wanted to they could convict but as you pointed out Judge Jordan, the standard is is it harmless beyond a reasonable doubt? There may have been enough to convict but it clearly was not overwhelming and as such, this couldn't be harmless error. And let me just point out the one thing again where Mr. Kokus stressed this point of how we tried to pull the wool over the jury's eyes and show that we were cooperating with authorities. It just isn't the case and the only point he really referred to was this business about they investigating the phone records but I pulled out the language. Um, he's uh he said, have you looked at these records since the 29th of September? And he said, we looked at them me and my counsel went over the phone records and they clearly referring to what was said in the sentence before took them and investigated further and we couldn't figure out What page is that exactly? What page did you say? It's um 14, 16 through 17 of the appendix. So we never tried to suggest that and when Mr. Cox made the reference to um uh Shannon referring to somebody else that he told this to they played a tape recording where Shannon called his fiance and said get a hold of dude and hire a lawyer for him and somehow he made it seem like that was a terrible thing that he told his fiance to get a lawyer for him and we brought out that the next sentence was and he said to his girlfriend because I thought I was helping a friend and now I'm in trouble the idea that somehow because we responded to a tape which they didn't play the whole thing that that means we were trying to create some false impression that he was cooperating with authorities just doesn't fly it wasn't harmless error the evidence wasn't overwhelming it's not harmless beyond a reasonable doubt and finally the last point as to the Aileen issue this claim by the government that because the jury found no five kilos or more wasn't proven it's no longer an element makes no sense and it's like saying if a jury acquits a first degree murder because they didn't find an element of premeditation that premeditation is no longer an element of murder it's still an element it's just one that the commonwealth or in this case        found no five kilos or more wasn't proven it's no longer an element makes no sense and it's like saying if a jury acquits a first degree                   that the commonwealth or in this case found no five kilos or more wasn't proven it's still an element makes no sense and it's like saying if a jury